SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
John T. Jasnoch (CA 281605)
707 Broadway, Suite 1000
San Diego, California 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
E-mail:    jjasnoch@scott-scott.com

*Attorneys for Plaintiffs*

[Additional counsel listed on signature page.]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RANDY NUNEZ, on Behalf of Himself and All Others Similarly Situated, | Case No.  '15 CV 2717 JAH WVG |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| SAKS INCORPORATED, a Tennessee corporation, and DOES 1-50, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

COMPLAINT

Plaintiff Randy Nunez brings this action on behalf of himself and all others similarly situated against Defendant Saks Incorporated ("Saks" or "Defendant"), and states:

## I.    NATURE OF ACTION

1.    This is a class action regarding Defendant's false and misleading advertisement of "market" prices, and corresponding phantom "savings" on clothing, shoes, and fashion apparel sold in its retail stores and/or on its Internet website.   During the Class Period (defined below), Defendant advertised false comparable prices and false price discounts for merchandise sold throughout its retail stores and/or on its Internet website.

2.    During the Class Period, Defendant continually misled consumers by advertising clothing, shoes, and fashion apparel at discounted, "savings" prices. Defendant would compare the "sale" prices to false "market" prices, which were misrepresented as the "market" retail prices from which the "savings" was discounted.   The advertised discounts were nothing more than mere phantom markdowns because the represented market prices were artificially inflated and were never the original prices for clothing, shoes, and fashion apparel sold at Defendant's retail stores and/or on its Internet website.  In addition, the represented "market" prices were not the prevailing market retail prices within three months next immediately preceding the publication of the advertised former prices, as required by California law.

3.    Defendant conveys its deceptive pricing scheme to consumers through the use of various media platforms including, but not limited to, its website and online promotional materials, in-store displays, and print advertisements.   For example, on Defendant's sales stickers, the pricing scheme is prominently displayed, advertising the "Market Price," crossed-out with a single black line and the discounted price, stating: "You Pay," followed by an announcement of the purported discount on a percentage basis.

4.      The "market price" never existed and/or did not constitute the prevailing market retail prices for such products within the three months next immediately preceding the publication of the sales tag.  Defendant sells its own, exclusive, "Saks" branded products.  There is no other "market price" for the products being sold other than the price set at Defendant's stores.  The difference between the "sale" and "regular" prices is a false savings percentage used to lure consumers into purchasing products they believe are significantly discounted.

5.      Through its false and misleading marketing, advertising, and pricing scheme, Defendant violated, and continues to violate, California law prohibiting advertising goods for sale as discounted from former prices which are false, and prohibiting misleading statements about the existence and amount of price reductions.  Specifically, Defendant violated, and continues to violate, California Business & Professions Code §§17200, *et seq.* (the "UCL"), California Business & Professions Code §§17500, *et seq.* (the "FAL"), the California Consumers Legal Remedies Act, California Civil Code §§1750, *et seq.* (the "CLRA"), and the Federal Trade Commission Act ("FTCA"), which prohibits "unfair or deceptive acts or practices in or affecting commerce" (15 U.S.C. §45(a)(1)) and false advertisements (15 U.S.C. §52(a)).

6.      Plaintiff brings this action on behalf of himself and other similarly situated consumers who have purchased one or more clothing, shoes, or fashion apparel at Defendant's retail stores and/or on its Internet website that were deceptively represented as discounted from false former prices in order to halt the dissemination of this false, misleading, and deceptive price scheme, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased Defendant's products.  Plaintiff seeks restitution and other equitable remedies, including an injunction under the UCL and FAL; and restitution, damages and an injunction under the CLRA.

## II.    JURISDICTION AND VENUE

7.     This Court has original jurisdiction of this Action pursuant to the Class Action Fairness Act, 28 U.S.C §1332(d)(2).   The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and at least some members of the proposed Class have a different citizenship from Defendant.

8.     The Southern District of California has personal jurisdiction over the Defendant named in this action because Defendant is a corporation or other business entity authorized to conduct, and does conduct, business in the State of California.   Defendant is registered with the California Secretary of State to do sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market through the ownership and operation of over 20 retail stores within the State of California.

9.     Venue is proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.   A substantial part of the events giving rise to Plaintiff's claims arose here.

## III.   PARTIES

### Plaintiff

10.     Randy Nunez resides in San Diego, California.   Mr. Nunez, in reliance on Defendant's false and deceptive advertising, marketing, and "discount" pricing schemes, purchased a pair of Saks Fifth Avenue branded shoes for approximately $86.39 on or around July 15, 2015, at a Saks Fifth Avenue "OFF 5TH" retail store located at 1750 Camino De La Reina, San Diego, California 92108.   The pair of shoes was advertised as originally having a "market price" of $145.00.   That price was crossed out and represented to Mr. Nunez as:   "You Pay: $79.99," a purported "44% Savings" according to the price tag.   However, this product was never offered for sale at $145.00 at Defendant's retail store, nor was it offered at that price within the 90-day time period immediately preceding Mr. Nunez's purchase.   Therefore, Mr. Nunez was damaged by his purchase of the product.

**Defendant**

11.    Plaintiff is informed and believes, and upon such information and belief alleges, Defendant Saks Incorporated, is a Tennessee corporation with its principal executive offices in New York, New York.   Defendant Saks is a subsidiary of Hudson Bay Company, a Canadian Corporation with its principal executive offices in Toronto, Canada.  Defendant operates Saks Fifth Avenue OFF 5TH stores and the saksoff5th.com website, and advertises, markets, distributes, and/or sells clothing and clothing accessories in California and throughout the United States.

12.    Plaintiff does not know the true names or capacities of the persons or entities sued herein as DOES 1-50, inclusive, and therefore sues such Defendants by such fictitious names.   Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged herein.  Plaintiff will amend this Complaint to set forth the true names and capacities of these Defendants when they have been ascertained, along with appropriate charging allegations, as may be necessary.

**IV.   FACTUAL BACKGROUND**

13.    On or around July 15, 2015, Plaintiff began searching for a new pair of shoes that he could wear to work.   Upon examining the men's shoes at Defendant's retail store, he observed a pair of black penny slip-ons, branded as a "Saks Fifth Avenue" labeled product.  Mr. Nunez observed the price tag on the bottom of the shoe's sole and read it.  Believing that he was receiving a significant value by purchasing $145 shoes for $79.99, he decided to purchase the shoes and proceeded to the cash register where he did, in fact, purchase the shoes.

14.    Specifically, relying upon Defendant's misrepresentations and false and deceptive advertising, Plaintiff purchased a pair of Saks Fifth Avenue penny slip-on shoes.  The price tag indicated that the "Market Price" of the shoes was

"$145.00," and that they were being offered at a discount, described as: "You Pay: $79.99," a purported 44% savings to the consumer.  This purported "market" price and corresponding price "discount" and savings was false and misleading, as the prevailing retail price for the Saks Fifth Avenue branded penny slip-ons during the three months immediately prior to Plaintiff's purchase was not the $145.00 "market" price advertised by Saks.

15.     Plaintiff would not have purchased the shoes without the misrepresentations made by Saks.  As a result, Plaintiff has been personally victimized by and suffered economic injury as a direct result of Defendant's unlawful, unfair, and fraudulent conduct.

16.     Defendant knows that its comparative price advertising is false, deceptive, misleading, and unlawful under California law.

17.     Defendant fraudulently concealed from and intentionally failed to disclose to Plaintiff and other members of the proposed class the truth about its advertised price and former prices.

18.     At all relevant times, Defendant has been under a duty to Plaintiff and the proposed class to disclose the truth about its false discounts.

19.     Plaintiff relied upon Defendant's artificially inflated "market" price and false discount when purchasing his shoes at Defendant's retail store.  Plaintiff would not have made the purchase but for Defendant's representations of the fabricated original "market" price and false discount.

20.     Plaintiff and the Class reasonably and justifiably acted and relied on the substantial price differences that Defendant advertised, and made purchases believing that they were receiving a substantial discount on an item of greater value than it actually was.  Plaintiff, like other Class members, was lured in, relied on, and damaged by this pricing scheme that Defendant carried out.

21.     Defendant intentionally concealed and failed to disclose material facts regarding the truth about false former price advertising in order to provoke

Plaintiff and the proposed class to purchase Saks Fifth Avenue-branded products in its retail stores and/or on its Internet website.

## V.    CLASS ALLEGATIONS

22.    Plaintiff brings this action on behalf of himself and all other similarly situated Class members pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class against Defendant for violations of California state laws:

> All persons who, while in the State of California and during the applicable statutes of limitations *(the "Class Period")*, purchased from Saks one or more Saks Fifth Avenue branded products at discounts from the advertised "market" price and who have not received a refund or credit for their purchase(s).

Excluded from the Class is Defendant, as well as its officers, employees, agents, or affiliates, and any judge who presides over this action, as well as all past and present employees, officers, and directors of Saks.  Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

23.    ***Numerosity***:  The Class members are so numerous that joinder of all members is impracticable.  Plaintiff is informed and believes that the proposed Class contains hundreds of thousands of individuals who have been damaged by Defendant's conduct as alleged herein.  The precise number of Class members is unknown to Plaintiff.

24.    ***Existence and Predominance of Common Questions of Law and Fact***:  This action involves common questions of law and fact, which predominate over any questions affecting individual Class members.  These common legal and factual questions include, but are not limited to, the following:

a.  whether, during the Class Period, Saks used false "market" or "original" price labels and falsely advertised price discounts on its Saks Fifth Avenue-branded products it sold in its retail stores and/or on its Internet website;

b.  whether, during the Class Period, the "original" or "market" prices advertised by Saks were the prevailing market prices for the respective Saks Fifth Avenue-branded products during the three months period preceding the dissemination and/or publication of the advertised former prices;

c.  whether Saks' alleged conduct constitutes violations of the laws asserted;

d.  whether Saks' engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

e.  whether Saks' engaged in false or misleading advertising;

f.  whether Plaintiff and Class members are entitled to damages and/or restitution and the proper measure of that loss; and

g.  whether an injunction is necessary to prevent Saks from continuing to use false, misleading, or illegal price comparison.

25.  ***Typicality***:  Plaintiff's claims are typical of the claims of the members of the Class because, *inter alia*, all Class members have been deceived (or were likely to be deceived) by Saks' false and deceptive price advertising scheme, as alleged herein.  Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class.

26.  ***Adequacy***:  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced in complex

COMPLAINT

1  consumer class action litigation, and Plaintiff intends to prosecute this action

2  vigorously.  Plaintiff has no antagonistic or adverse interest to those of the Class.

3      27.  **Superiority**:  The nature of this action and the nature of laws available

4  to Mr. Nunez and the Class make the use of the class action format a particularly

5  efficient and appropriate procedure to afford relief to him and the Class for the

6  wrongs alleged.  The damages or other financial detriment suffered by individual

7  Class members is relatively modest compared to the burden and expense that

8  would be entailed by individual litigation of their claims against Saks.  It would

9  thus be virtually impossible for Plaintiff and Class members, on an individual

10  basis, to obtain effective redress for the wrongs done to them.  Absent the class

11  action, Class members and the general public would not likely recover, or would

12  not likely have the chance to recover, damages or restitution, and Saks will be

13  permitted to retain the proceeds of its fraudulent and deceptive misdeeds.

14      28.  All Class members, including Mr. Nunez, were exposed to one or

15  more of Saks' misrepresentations or omissions of material fact claiming that

16  former "original" advertised prices were in existence.  Due to the scope and extent

17  of Saks' consistent false "discount" price advertising scheme, disseminated in a

18  years-long campaign to California consumers via a number of different platforms –

19  in-store displays, Internet advertisements, print advertisements, etc. – it can be

20  reasonably inferred that such misrepresentations or omissions of material fact were

21  uniformly made to all members of the Class.  In addition, it can be reasonably

22  presumed that all Class members, including, Mr. Nunez, affirmatively acted in

23  response to the representations contained in Saks' false advertising scheme when

24  purchasing his Saks Fifth Avenue branded penny slip-on shoes at the Saks Fifth

25  Avenue OFF 5TH retail store.

26      29.  Saks keeps extensive computerized records of its customers through,

27  *inter alia*, customer loyalty programs, co-branded credit cards, and general

28  marketing programs.  Saks has one or more databases through which a significant

majority of Class members may be identified and ascertained, and it maintains contact information, including email and home addresses, through which notice of this action could be disseminated in accordance with due process requirements.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**Violation of Unfair Competition Law**
**Business and Professions Code §17200, *et seq*.**

30.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

31.     The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising.  Cal. Bus. & Prof. Code §17200.

32.     The UCL imposes strict liability.  Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices, but only that such practices occurred.

33.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

34.     Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in misleading and deceptive price comparison advertising that represented false "regular" prices and "discount" prices that were nothing more than fabricated "regular" prices leading to phantom markdowns.  Defendant's acts and practices offended an established public policy and engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

35.     The harm to Plaintiff and Class members outweighs the utility of Defendant's practices.  There were reasonably available alternatives to further

10

COMPLAINT

1  Defendant's legitimate business interests, other than the misleading and deceptive

2  conduct described herein.

3      36.   A business act or practice is "fraudulent" under the UCL if it is likely

4  to deceive members of the consuming public.

5      37.   A business act or practice is "unlawful" under the UCL if it violates

6  any other law or regulation.

7      38.   Defendant's acts and practices alleged above have deceived Plaintiff

8  and are highly likely to deceive members of the consuming public.  Plaintiff relied

9  on Defendant's fraudulent and deceptive representations regarding its "market"

10  prices for products which Defendant sells exclusively at its Saks Fifth Avenue

11  stores.  These misrepresentations played a substantial role in Plaintiff's decision to

12  purchase those products at steep discounts, and Plaintiff would not have purchased

13  those products without Defendant's misrepresentations.

14      39.   The FTCA prohibits "unfair or deceptive acts or practices in or

15  affecting commerce" (15 U.S.C. §45(a)(1)) and prohibits the dissemination of any

16  false advertisements (15 U.S.C. §52(a)).  Under the FTCA, false former pricing

17  schemes, similar to the ones implemented by Saks, are described as deceptive

18  practices that would violate the FTCA:

19  (a)   One of the most commonly used forms of bargain advertising is
        to offer a reduction from the advertiser's own former price for
20      an article.  If the former price is the actual, bona fide price at
        which the article was offered to the public on a regular basis for
21      a reasonably substantial period of time, it provides a legitimate
        basis for the advertising of a price comparison.  Where the
22      former price is genuine, the bargain being advertised is a true
        one.  If, on the other hand, the former price being advertised is
23      not bona fide but fictitious – for example, where an artificial
        price, inflated price was established for the purpose of enabling
24      the subsequent offer of a large reduction – the "bargain" being
        advertised is a false one; the purchaser is not receiving the
25      unusual value he expects.

26  16 C.F.R. §233.1(a).

27  (b)   A former price is not necessarily fictitious merely because no
        sales at the advertised price were made.  The advertiser should
28      be especially careful, however, in such a case, that the price is
        one at which the product was openly and actively offered for

11

COMPLAINT

1
2

> sale, for a reasonably substantial period of time, in the recent, regular course of his business, honestly and in good faith – and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based.

3      16 C.F.R. §233.1(b).

4          40.    California law also expressly prohibits false former pricing schemes.

5      Cal. Bus. & Prof. Code §17501, entitled "*Worth or Value; statements as to former*

6      *price*" states:

7
8
9

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

10
11
12
13

> ***No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement*** or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

14     [Emphasis added.]

15         41.    As detailed in Plaintiff's Third Cause of Action below, California

16     Civil Code §1770(a)(9), prohibits a business from "[a]dvertising goods or services

17     with intent not to sell them as advertised," and subsection (a)(13) prohibits a

18     business from "[m]aking false or misleading statements of fact concerning reasons

19     for, existence of, or amounts of price reductions."

20         42.    Defendant's practices, as set forth above, have mislead Plaintiff, the

21     proposed Class, and the general public in the past and will continue to mislead in

22     the future.  Consequently, Defendant's practices constitute an unlawful an unfair

23     business practice in within the meaning of the UCL.

24         43.    Defendant's violation of the UCL through its unlawful, unfair, and

25     fraudulent business practices are ongoing and present a continuing threat that

26     members of the public will be deceived into purchasing products based on price

27     comparisons of arbitrary and inflated "regular" prices to "sale" prices that created

28

1   merely phantom markdowns and lead to financial damage for consumers, like
2   Plaintiff and the proposed Class.

3       44.     Pursuant to the UCL, Plaintiff is entitled to preliminary and
4   permanent injunctive relief ordering Defendant to cease this unfair competition, as
5   well as disgorgement and restitution to Plaintiff and the Class of all of Defendant's
6   revenues associated with its unfair competition, or such portion of those revenues
7   as the Court may find equitable.

8                         **SECOND CAUSE OF ACTION**
                     **Violation of the California False Advertising Law,**
9             **California Business and Professions Code §17500, *et seq*.**

10      45.     Plaintiff repeats and re-alleges the allegations contained in every
11  preceding paragraph as if fully set forth herein.

12      46.     Cal. Bus. & Prof. Code §17500 provides that "[i]t is unlawful for any
13  … corporation … with intent … to dispose of … personal property … to induce
14  the public to enter into any obligation relating thereto, to make or disseminate or
15  cause to be made or disseminated … from this state before the public in any state,
16  in any newspaper or other publication, or any advertising device, or by public
17  outcry or proclamation, or in any other manner or means whatever, including over
18  the Internet, any statement … which is ***untrue*** or misleading, and which is known,
19  or which by the exercise of reasonable care should be known, to be untrue or
20  misleading…." [Emphasis added].

21      47.     The "intent" required by Cal. Bus. & Prof. Code §17500 is the intent
22  to dispose of property, and not the intent to mislead the public in the disposition of
23  such property.

24      48.     Similarly, this section provides, "[n]o price shall be advertised as a
25  former price of any advertised thing, unless the alleged former prices was the
26  prevailing market price…within three months next immediately preceding the
27  publication of the advertisement or unless the date when the alleged former price

28

1   did prevail is clearly, exactly and conspicuously stated in the advertisement."  Cal.

2   Bus. & Prof. Code §17501.

3       49.    Defendant's routine of advertising discounted prices from false

4   "market" prices associated with its Saks Fifth Avenue branded products which

5   were never the true prevailing "market" prices of those products and were

6   materially greater than the true prevailing prices was an unfair, untrue, and

7   misleading practice.  This deceptive marketing practice gave consumers the false

8   impression that the products were regularly sold on the market for a substantially

9   higher price than they actually were, therefore, leading to the false impression that

10  the Saks Fifth Avenue-branded products were worth more than they actually were.

11      50.    Defendant misled consumers by making untrue and misleading

12  statements and failing to disclose what is required as stated in the Code, as alleged

13  above.

14      51.    As a direct and proximate result of Defendant's misleading and false

15  advertisements, Plaintiff and Class members have suffered injury in fact and have

16  lost money.  As such, Plaintiff requests that this Court order Defendant to restore

17  this money to Plaintiff and all Class members, and to enjoin Defendant from

18  continuing these unfair practices in violation of the UCL in the future.  Otherwise,

19  Plaintiff, Class members, and the broader general public will be irreparably harmed

20  and/or denied an effective and complete remedy.

21                          **THIRD CAUSE OF ACTION**
                **Violation of the Consumers Legal Remedies Act ("CLRA"),**
22                    **California Civil Code §1750, *et seq*.**

23      52.    Plaintiff repeats and re-alleges the allegations contained in every

24  preceding paragraph as if fully set forth herein.

25      53.    This cause of action is brought pursuant to the Consumers Legal

26  Remedies Act (CLRA), California Civil Code §1750, *et seq*., and similar laws in

27  other states.  Plaintiff and each member of the proposed Class are "consumers" as

28  defined by California Civil Code §1761(d).  Defendant's sale of the Saks Fifth

Avenue-branded products to Plaintiff and the Class were "transactions" within the meaning of California Civil Code §1761(e).  The products purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code §1761(a).

54.    Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Saks Fifth Avenue branded products:

    a.    advertising goods or services with intent not to sell them as advertised; and

    b.    Making false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions.

55.    Pursuant to §1782(a) of the CLRA, on December 3, 2015, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act.  If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend his Complaint to pursue claims for actual, punitive, and statutory damages, as appropriate against Defendant.  As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

## VII.   PRAYER FOR RELIEF

56.    Wherefore, Plaintiff, on behalf of himself and on behalf of the other members of the Class, requests that this Court award relief against Saks as follows:

A.    An order certifying the class and designating Randy Nunez as the Class Representative and his counsel as Class Counsel;

B.    Awarding Plaintiff and the proposed Class members damages;

C.    Awarding restitution and disgorgement of all profits and unjust enrichment that Defendant's obtained from Plaintiff and the Class members as a result of its unlawful, unfair, and fraudulent business practices described herein;

D.    Awarding declaratory and injunctive relief as permitted by law or equity, including:  enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervisions, victims of its misconduct and pay them all money they are required to pay;

E.    Order Defendant to engage in a corrective advertising campaign;

F.    Awarding attorneys' fees and costs; and

G.    For such other and further relief as the Court may deem necessary or appropriate.

## VIII.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all of the claims so triable.

Dated:  December 3, 2015          SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

*/s/*John T. Jasnoch
John T. Jasnoch (CA 281605)
707 Broadway, Suite 1000
San Diego, California  92101
Telephone:  619-233-4565
Facsimile:  619-233-0508
jjasnoch@scott-scott.com

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
Joseph P. Guglielmo
Erin G. Comite
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: 212-223-6444
Facsimile: 212-223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CARPENTER LAW GROUP
Todd D. Carpenter (CA 234464)
402 West Broadway, 29th Floor
San Diego, California 92101
Telephone: 619.756.6994
Facsimile: 619.756.6991
todd@carpenterlawyers.com

CARLSON LYNCH SWEET & KILPELA, LLP
Gary F. Lynch
Edwin J. Kilpela, Jr.
1133 Penn Avenue
5th Floor
Pittsburgh, PA 15222

*Attorneys for Plaintiff*

COMPLAINT